## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

CARLA E. HARDAWAY, and
NYRAND H. HARDAWAY

        Plaintiffs,

vs.

ADAM J. DIROFF,
DARREN JOHN LONG,
THOMAS RICHARD KILL,
STEVEN CHENET,
CHAD GRUENWALD, and
BLAINE STORMER.

        Defendants.

Case No.
HON.

_____/

David F. Zuppke (P31240)
DAVID F. ZUPPKE, PLC
Attorney for Plaintiffs
25892 Woodward Ave.
Royal Oak, MI 48067
(248) 206-5900
david@zuppkelaw.com

DAVID A. RUDOI (P75169)
Co-Counsel for Plaintiffs
108 S Main St Suite A,
Royal Oak, MI 48067
(248) 935-9074
(248) 282-0556 (fax)
drudoi@rudoilaw.com

_____/

***This action was previously filed as Case No. 2:24-cv-10528-MFL-EAS in this Court, and by stipulation dismissed without prejudice on June 26, 2024.***

_____/

1

## COMPLAINT AND JURY DEMAND

Plaintiff, Carla Elaine Hardaway ("Carla"), and Nyrand H. Hardaway ("Nyrand"), complain as follows:

## PRELIMINARY STATEMENT

This action is brought by two U.S. citizens domiciled in Wayne County, and Oakland County, Michigan, respectively, against police officers and state troopers in their personal capacity.  The claims are "direct" and "individual" and arise under 42 U.S.C. § 1983, Fourth and Fourteenth Amendment for claims of excessive force, unreasonable seizure, and deliberate indifference and wrongful denial of medical needs.

On March 10, 2023, Defendants, part of a task force dressed in tactical gear forcefully entered Plaintiffs' home (mother and son), with firearms drawn, to execute a search warrant issued in connection with their husband and father Andre Hardaway ("Andre").  The police initiated a gunfight with Andre and he returned fire.  Neither Plaintiff had a criminal record nor the subject of the warrant. Neither was involved in the armed conflict nor committed or charged with a crime.

Plaintiff Carla E. Hardaway ("Carla"), is a multiple amputee with two amputated feet and four missing fingertips.  Her claims arise from the actions of Defendant Michigan State Police troopers Blaine Stormer ("Stormer"), Thomas Richard Kill ("Kill), Chad Gruenwald ("Gruenwald"), Adam J. Diroff ("Diroff"),

2

Clarkston Police Officer Steven Chenet ("Chenet"), and Detroit Police Officer Darren John Long ("Long").  The Defendants individually and collectively used excessive force removing Carla from her home, dragging her around the ground, yanking her arm out of its socket, ripping her recent skin grafts in the process, denying her medical care, forcing her into a police vehicle and transporting her to a police station for an interrogation against her will.

Her legal claims include violations of her United States Constitutional Fourth and Fourteenth Amendments rights, 42 U.S.C. §1983 for excessive force, unreasonable seizure, and under 42 U.S.C. §1983 deliberate indifference to, and wrongful denial of her serious medical needs.

Nyrand H. Hardaway's ("Nyrand") claims arise from the individual and collective actions of Stormer, Kill, Diroff and Detroit Police Officer Darren John Long ("Long"), by among other things, for firing a weapon at Nyrand, unreasonably handcuffing him behind his back, keeping him handcuffed long after any emergency or exigent circumstances ended, shoving him into a police vehicle, elbowing him in the face, then choking and beating him while he was defenseless. Each of the Defendants committed, participated, and contributed to one or more of the acts and use of unreasonable force. Nyrand's legal claims include violations of his United States Constitutional Fourth Amendment Rights, 42 U.S.C. §1983 for use of excessive force and unreasonable seizure.

3

Both suffered physical, emotional and mental injuries for which they seek compensatory and punitive damages, plus costs, interest and attorney fees

## **JURISDICTION & VENUE**

1.     Jurisdiction is founded on 28 U.S.C. §1331 (federal question), and pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, as well as 42 U.S.C § 1983, 28 U.S.C. § 1331 and 28 U.S.C. § 1343 (a)(3)-(4), and venue is proper in this District under 28 U.S.C. §1391(b).

2.     Carla E. Hardaway ("Carla"), is domiciled in the City of Detroit, State of Michigan, and within the Eastern District of the United States Federal District Court.

3.     Nyrand H. Hardaway ("Nyrand"), is domiciled in the City of Novi, State of Michigan, and within the Eastern District of the United States Federal District Court.

4.     Defendant Adam Joseph Diroff ("Diroff"), upon information and belief, resides in Wayne County, State of Michigan, and within the Eastern District of the United States Federal District Court.

5.     Defendant Darren John Long ("Long"), upon information and belief, resides in Wayne County, State of Michigan, and within the Eastern District of the United States Federal District Court.

6.     Defendant Thomas  Richard Kill ("Kill"), upon information and

4

belief, resides in Livingston County, State of Michigan, and within the Eastern

District of the United States Federal District Court.

7.     Defendant Blaine Stormer ("Stormer"), upon information and belief,

resides in Oakland County, State of Michigan, and within the Eastern District of

the United States Federal District Court.

8.     Defendant Chad Gruenwald ("Gruenwald"), upon information and

belief resides Wayne County, State of Michigan and within the Eastern District of

the United States Federal District Court.

9.     Defendant Steven Chenet ("Chenet"), upon information and belief,

resides Oakland County, State of Michigan and within the Eastern District of the

United States Federal District Court.

## FACTS:

10.     On March 10, 2023 Carla resided in her Detroit, Michigan home with

her son Nyrand.

11.     On that day, Carla's husband, and Andre's father, Andre Hardaway

("Andre"), was present but didn't reside there.

12.     At approximately 5:00 p.m., after Andre had picked up and returned

Carla to her home from a doctor's visit.

13.     Nyrand was upstairs wearing headphones

14.     Carla was laying down on her office couch.

5

15.     Andre was in the first floor bathroom.

16.     Carla's doctor visit was in connection with a surgery involving her recently amputated feet (which left her with a residual foot, also referred to as a stump or stump), and four fingertips.

17.     While Plaintiffs were inside the home, a police task force that included the Defendants, assembled, and/or arrived on the scene, to execute a search warrant for Andre.

18.     The underlying arrest warrant for Andre was for a **<u>non-violent</u>** weapons offense.

19.     Neither Carla nor Nyrand were the subject or object of the warrant.

20.     Neither had criminal records.

21.     The police announced their presence but neither Plaintiff heard the announcement.

22.     The police task force broke through the front door with a battering ram.

23.     The police were wearing tactical gear and brandishing weapons that included automatic rifles.

24.     Seconds after the officers' entry, Carla was standing on her two prosthetic feet-shoes supported by a pair of crutches.

25.     Carla was screaming "what are you doing, why are you in my house",

6

and to no avail, she demanded to see a search warrant.

26.     As Defendant Kill, Diroff, and/or Gruenwald approached and grabbed Carla, she started screaming that she was disabled.

27.     At about the same time, Nyrand descended the stairs holding his dog with one hand by the collar, and blinded by police flashlights, he held out his other unarmed hand open and towards the police.

28.     Andre emerged from the bathroom with nothing in his hands.

29.      Multiple officers were pointing loaded firearms at Andre, and he began to yell "No! No", to avoid being shot.

30.     Andre briefly closed the bathroom door to get out of the line of fire, and then with his empty hands in full sight of the officers, headed towards an office for cover.

31.     Andre was immediately tased by Trooper Maxwell Prince (non-defendant).

32.     Stormer pointed and fired his firearm at Nyrand who was only a few feet away.

33.     Andre escaped into Carla's office and the police opened fire shooting at Andre through the wall.

34.     Nyrand ducked into Carla's bedroom with his dog to avoid being shot.

35.     Andre found Carla's registered handgun, and in the defense of Nyrand

and himself, fired back at the officers.

36.     Andre was struck by ten bullets, and upon information and belief, at least two officers were struck by gunshots fired by either Andre or friendly fire by police officers or troopers.

37.     Immediately before the gunfight Defendant Kill initially, and then in concert with Diroff, Gruenwald and Chenet, grabbed Carla by her arm causing her to drop a crutch and fall onto a nearby couch, following which the Defendants dragged Carla off the couch, and onto the floor where they proceeded to drag her on the ground to the front door, over the threshold and concrete stoop, down the concrete steps, across the concrete walkway, and over the frozen snow covered lawn.

38.      In the process, her prosthetic foot, (a/k/a prosthetic shoe or shoe), was torn from her stump.

39.     As she was being dragged on the ground in intense pain, Carla repeatedly pled for the Defendants to "wait a minute" and for them to get her prosthetic foot-shoe telling them that "she can't walk".  "I don't have any feet"

40.     The firefight and all shooting had stopped, yet the Defendants continued to drag Carla on the ground towards the rear of a tactical vehicle.

41.     The dragging of Carla without her shoe tore away recent skin grafts.

42.     Nyrand emerged from the home without his dog, which had run away.

43.     A  group of armed officers, pointing rifles at Nyrand, began to yell at him to raise his hands and walk to them.

44.     As Nyrand was walking towards the officers with his hands on his head, Carla crawled to, and grabbed a hold of the tactical unit to pull herself up onto her knees with her one crutch in hand so she could retrieve her other foot.

45.     While Carla was on her knees, Defendants were already aware that she had amputated feet and had lost a prosthetic foot and one crutch.

46.     Despite that knowledge, Defendant Kill demanded that she "stand up" and  Carla asked why they were there, and Kill gave her "three seconds" to stand before he was going to "drag her" again.

47.     Carla again informed Defendants that she didn't have any feet, and Chenet and Kill grabbed her by her arms and began to drag her as she screamed "I don't have any feet".

48.     The officers lifted her and forced her to stand on her skin graft torn stump as she asked for her son.

49.     The Defendants' yanking and dragging of Carla by her arms, dislocated her arm/shoulder.

50.     Carla repeatedly told the Defendants that she was not leaving her home nor did she agree to go to a police station.

51.     Carla asked to be taken to a hospital, and Kill and Chenet forced her

to walk by pulling her forward with them on her stump towards a police car into which she was placed under the false pretense of being taken for medical care.

52.     She was then transported against her will to a Detroit Police station and detained and interrogated until she was released without criminal charges.

53.     Carla was never a threat to the Defendants or others, and never interfered with police activity.

54.     As a direct and proximate result of the Defendants' use of excessive force, Carla proximately suffered economic and non-economic damages, including but not limited to medical expenses and other economic damages, past, present and future; physical injuries, pain and suffering, skin graft injuries, dislocated arm/shoulder, severe mental and emotional distress, loss of dignity, embarrassment, humiliation, degradation, mortification, shock, fright, mental anguish, outrage, anxiety, feelings of helplessness, despair, depression, loss of self-esteem, loss of enjoyment of life, past, present and future, and her loss of liberty and denial of her constitutional rights.

55.     Circling back to Nyrand, within seconds of Andre being tased, Nyrand was standing in the doorway of Carla's bedroom and Stormer fired his weapon directly at Nyrand, missing him.

56.     At about the same time as Carla was dragged to the rear of the tactical unit and after Nyrand had walked to the police as ordered.

10

57.     Once within reach of Defendant Diroff, Nyrand was grabbed by his arms, patted down, handcuffed by Kill, and/or Diroff and forcefully walked towards the nearby corner of the street.

58.     Defendant Darren John Long ("Long"), pulled up in an unmarked police car up and said to Defendants "I'll take him".

59.     Kill then pushed Nyrand over to Long's front passenger door where he proceeded to force Nyrand into the front passenger seat and elbowed Nyrand in the face, breaking his nose and glasses.

60.     Once Nyrand was seated, Long attacked Nyrand by placing him in a choke hold for approximately 5-10 seconds causing Nyrand to be unable to speak or breathe.  Nyrand started to pass out.

61.      Long released the choke hold and began to punch Nyrand in the face and head, bash Nyrand's head into the car pillar where the seatbelt retracts, and told Nyrand that "those are my friends in there. I know one of their sons", (referring to officers who were shot in the gunfight).

62.     Long then repositioned his car, received a phone call, and exited the vehicle.

63.     Nyrand was removed from Long's car and turned over to, and placed into the front passenger seat of another State Trooper's car and was taken against his will to a Detroit Police station.

64.    Still handcuffed, Nyrand was placed in a locked interrogation room for a period of time.

65.    Another officer came into the room, and at Nyrand's request, unhandcuffed Nyrand.

66.    A Detective then came in and read Nyrand his Miranda rights, which Nyrand exercised by informing the officer that he would not make any statements.

67.    Nyrand heard his mother's voice in the next room and was released shortly thereafter without criminal charges.

68.    Each of the Defendants' actions were intentional, malicious, and undertaken with reckless and callous indifference to Plaintiffs' federally protected constitutional rights, entitling Plaintiffs to punitive damages.

69.    Both Plaintiffs suffered physical injuries.

70.    Neither ever posed a threat to the Defendants or others.

71.    Neither interfered with police activity.

72.    Neither committed any act of violence nor committed crimes.

73.    Defendants' conduct, acts and statements constitute and imply malice.

74.    As a direct and proximate result of the Defendants' excessive use of force, Nyrand proximately suffered economic and non-economic damages, including but not limited to physical injuries, pain and suffering, bruises and swelling of his face, head and neck, severe mental and emotional distress, loss of

dignity, embarrassment, humiliation, degradation, mortification, shock, fright,

mental anguish, outrage, anxiety, feelings of helplessness, despair, depression, loss

of self-esteem, loss of enjoyment of life, past, present and future, and his loss of

liberty and denial of her constitutional rights.  Nyrand's severe mental and emotion

injuries and PTSD caused him to fall into a deep depression that resulted in him

secluding himself in a basement for months, where he developed suicidal ideations

that caused him to repeatedly call suicide hotlines for help.  His non-economic

damages are permanent.

## COUNT I - 42 U.S.C. § 1983 FOURTH AMENDMENT CARLA-EXCESSIVE FORCE

75.     Carla incorporates the preceding paragraphs.

76.     This Count is against all Defendants in their individual capacities.

77.     At all relevant times, Defendants acted under color of state law.

78.     The Fourth Amendment protects individuals from the use of

objectively unreasonable force during a seizure.

79.     Defendants used objectively unreasonable force when, among other

things, they grabbed, detained, dragged, pushed, forced Carla to stand and walk on

her stump, and forcibly moved Carla from place to place and into a car against her

will despite:

   a.  Her visible and known amputee condition;

   b.  Her repeated statements that she could not stand or walk without her

13

prosthetic feet/shoes and crutches;

c. Her known physical disability;

d. Knowing she could not comply when ordered to stand;

e. The absence of resistance or threat by Carla;

f. Readily available assistance from other officers at the scene who would have been able to lift and carry Carla from her home without using unnecessary force, and

g. The cessation of shooting, exigent circumstances, or safety risks to the Defendants, other officers, and/or any other person.

80. The force used was unnecessary and disproportionate to any legitimate law enforcement purpose.

81. Defendants ignored safe and alternative options for Carla's extraction from the home, including but not limited to retrieving her medical appliances to permit her to ambulate without being dragged.

82. The excessive force inflicted damages and injuries upon Carla and violated her clearly established Fourth Amendment rights.

83. The excessive force used against Carla directly and proximately caused the injuries and damages set forth above.

WHEREFORE, Plaintiff Carla E. Hardaway respectfully request that this Court enter judgment in her favor and against Defendants and award:

A. Compensatory damages in an amount in excess of $75,000.00 to be determined at trial;

B. Punitive damages in an amount in excess of $75,000.00 against the individual Defendants in an amount sufficient to punish and deter similar misconduct;

C. Reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988;

D. Pre-judgment and post-judgment interest as allowed by law;

E. Such other and further relief as this Court deems just and proper.

## COUNT II - 42 U.S.C. § 1983 FOURTH AMENDMENT NYRAND-EXCESSIVE FORCE (Kill, Diroff, Stormer and Long only)

84.    Nyrand incorporates the preceding paragraphs.

85.    Defendants individually and in concert, fired a weapon at Nyrand, handcuffed him and or continued to keep him handcuffed beyond a reasonable period after exigent circumstances ended; after it was clear that he posed no threat to Defendants and others, and despite his compliant conduct, forcing him to and inside a police vehicle, elbowing him in the face and nose, punching him in the face and head, repeatedly slamming his head into the door pillar, and choking him while Nyrand was immobilized in handcuffs, compliant, and not resisting constitute acts and use of excessive force.

86.    Long and Kill's actions were fueled by anger, rage, and intent to inflict retaliatory punishment upon Nyrand for his father's actions inside the home.

15

87.    The excessive force by Defendants proximately caused severe and permanent injuries and damages, both economic and non-economic, and violated Nyrand's clearly established Fourth Amendment rights.

WHEREFORE, Plaintiff Nyrand H. Hardaway respectfully request that this Court enter judgment in his favor and against Defendants and award:

A. Compensatory damages in an amount in excess of $75,000.00 to be determined at trial;

B. Punitive damages against the individual Defendants in an amount in excess of $75,000.00 to be determined at trial sufficient to punish and deter similar misconduct;

C. Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

D. Pre-judgment and post-judgment interest as allowed by law;

E. Such other and further relief as this Court deems just and proper.

### COUNT III - 42 U.S.C. § 1983 FOURTH AMENDMENT CARLA - UNREASONABLE SEIZURE (All Defendants)

88.    Carla incorporates the preceding paragraphs.

89.    Carla was seized within the meaning of the Fourth Amendment.

90.    At the time of her detention, transport, arrest and interrogation:

a.    Carla was not the subject of a warrant;

b.    Carla was not suspected of, nor did she commit criminal acts;

c.    Carla posed no threat to Defendants' or others' safety; and

16

d. Carla did not unreasonably resist law enforcement.

91. There was no reasonable basis to seize, or continue Carla's seizure and detention following the cessation of gunfire and exigent and emergency circumstances, or transport and hold her against her will.

92. Defendants seized, detained, arrested and transported, Carla without probable cause or lawful justification.

93. Such conduct constituted an unreasonable seizure in violation of Carla's clearly established Fourth Amendment rights.

94. Such conduct directly and proximately caused Carla severe and permanent economic and non-economic injuries and damages.

WHEREFORE, Plaintiff Carla E. Hardaway respectfully requests that this Court enter judgment in her favor and against Defendants and award:

A. Compensatory damages in an amount in excess of $75,000.00 to be determined at trial;

B. Punitive damages against the individual Defendants in excess of $75,000.00  in an amount sufficient to punish and deter similar misconduct;

C. Reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988;

D. Pre-judgment and post-judgment interest as allowed by law;

E. Such other and further relief as this Court deems just and proper.

## **COUNT IV - 42 U.S.C. § 1983 FOURTH AMENDMENT NYRAND - UNREASONABLE SEIZURE (All Defendants)**

95.    Nyrand incorporates the preceding paragraphs.

96.    Nyrand was seized within the meaning of the Fourth Amendment.

97.    At the time of his detention, transport, arrest and interrogation:

    a.  Nyrand was not the subject of the warrant;

    b.  Nyrand was not suspected of criminal conduct nor did he commit a
        criminal act;

    c.  Nyrand posed no threat to the Defendants' or others' safety; and

    d.  Nyrand did not unreasonably resist law enforcement.

98.    There was no reasonable basis to seize, or continue Nyrand's seizure
and detention following the cessation of gunfire and exigent and emergency
circumstances against his will.

99.    Defendants seized, detained, arrested and transported Nyrand without
probable cause or lawful justification.

100.    Such conduct constituted an unreasonable seizure in violation of
Nyrand's clearly established Fourth Amendment rights.

101.    Such conduct directly and proximately caused Nyrand severe and
permanent economic and non-economic injuries and damages.

102.    WHEREFORE, Plaintiff Nyrand H. Hardaway respectfully requests
that this Court enter judgment in his favor and against Defendants and award:

    A. Compensatory damages in an amount in excess of $75,000.00 to be

determined at trial;

B. Punitive damages against the individual Defendants in an amount in excess of $75,000.00 and sufficient to punish and deter similar misconduct;

C. Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

D. Pre-judgment and post-judgment interest as allowed by law;

E. Such other and further relief as this Court deems just and proper.

## COUNT V - 42 U.S.C. § 1983 FOURTEENTH AMENDMENT CARLA-DELIBERATE INDIFFERENCE AND WRONGFUL DENIAL TO/OF SERIOUS MEDICAL NEEDS (Against Diroff and Kill only)

103.   Carla incorporates the preceding paragraphs.

104.   Separate and apart from the violation of Carla's Fourth Amendment rights, Defendants' conduct violated her Fourteenth Amendment Rights that are not directly covered by the Fourth Amendment.

105.   Defendant were informed and had actual knowledge that had a severe medical condition and was a double amputee who was unable to stand or walk safely without her medical appliances or assistance.

106.   Carla was in obvious pain and distress after her prosthetic foot was torn from her.

107.   Despite dozens of requests, Defendants refused to retrieve Carla's prosthetic foot and crutch prior to dragging her around, forcing her to stand and walk on a medically amputated foot/stump, or provide readily available medical

19

help and reasonable assistance.

108.   Despite Carla's plea to take her to a hospital for medical care, and for legitimate reason or exigency, Carla was refused medical care and sent to the Detroit Police station at the direction of Defendants to be interrogated.

109.   Defendants' conduct constituted deliberate indifference and objectively unreasonable treatment in violation of Carla's Fourteenth Amendment rights.

110.   Such conduct directly and proximately caused Carla injuries and damages set forth above and violated her clearly established Fourteenth Amendment rights.

111.   The conduct of Defendants was intentionally committed with malice and callous and reckless disregard for Plaintiff's rights.

112.   WHEREFORE, Carla respectfully requests that this Court enter judgment in her favor and against Defendants and award:

A. Compensatory damages in an amount in excess of $75,000.00 to be determined at trial;

B. Punitive damages in an amount in excess of $75,000.00 against the individual Defendants in an amount sufficient to punish and deter similar misconduct;

C. Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

D. Pre-judgment and post-judgment interest as allowed by law;

E. Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

DAVID F. ZUPPKE, PLC

BY: /*s/David F. Zuppke*
David F. Zuppke (P31240)
Attorney for Plaintiffs
25892 Woodward Ave.
Royal Oak, MI 48067
March 9, 2025                                                 (248) 206-5900

21